**Vihar MIHAYLOV, Vihra Mihaylova, Estate of Evgeni Mihaylov, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A. 98–02151(HHK).**

United States District Court, District of Columbia.

Nov. 2, 1999.

Marjorie A. O'Connell, Washington, DC, for Plaintiffs.

Lydia Kay Griggsby, Assistant United States Attorney for the District of Columbia, Office of the United States Attorney for the District of Columbia, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KENNEDY, District Judge.

This suit is brought under the Federal Tort Claims Act.[1] Plaintiffs, the mother and father of Evgeni Mihaylov, claim that the United States Secret Service negligently executed its duty to protect and uphold the inviolability of the Bulgarian Chancery in Washington, D.C. and that, as a result, their son lost his life. Before the court is the United States' motion to dismiss or, in the alternative, for summary judgment. Having reviewed the motion, plaintiffs' opposition thereto, and the record of this case, the court concludes that the discretionary function exception to the Federal Tort Claims Act strips the court's subject matter jurisdiction over plaintiffs' claims.[2] Consequently, the United States' motion to dismiss will be granted.

### I. FACTUAL BACKGROUND

The facts underlying plaintiffs' claims are undisputed and unfortunate. On October 23, 1995, shortly after 9 p.m., two would-be robbers attacked Evgeni Mihaylov, Panaiot Ignatiev, and their companion on the steps outside the Chancery of Bulgaria in Washington, D.C. A struggle ensued; the assailants beat Ignatiev about his head and face and shot Mihaylov as he tried to flee into the Embassy. The miscreants fled before three Secret Service Uniformed Division cruisers—dispatched by the Secret Service's Foreign Missions Branch Control Center—arrived on the scene.

When Secret Service Officers entered the Chancery, they found Mihaylov lying prone in the foyer. He was taken by ambulance to George Washington Hospital and declared dead at 10:40 p.m., felled at age 21 by a bullet that entered his left forearm and stopped only after piercing his heart.

Presumably in response to this gruesome incident, the Foreign Missions Branch assigned a single Secret Service officer to guard the Chancery of Bulgaria. This "fixed post coverage" began approximately two hours after the October 23, 1995, attack and ended on November 6, 1995. The assailants were apprehended some days later and—roughly two years after their crimes—were convicted and sentenced to lengthy prison terms.

Plaintiffs timely presented their claims to the United States Secret Service on October 20, 1997. After six months lapsed and plaintiffs received no response, they filed this action on September 8, 1998.

### II. ANALYSIS

The United States may be sued only if federal legislation explicitly creates a cause of action.[3] In 1946, Congress passed the Federal Tort Claims Act ("FTCA") and for the first time recognized the federal government's liability in tort.[4] At first blush, the FTCA expansively provides jurisdiction in the federal district courts over claims against the United States:

> [F]or injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

1. 28 U.S.C. §§ 1346(b), 2671 *et seq.*

2. 28 U.S.C. § 2680(a); *see, e.g., United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (holding that "liability under the FTCA is subject to the various exceptions contained in § 2680, including the 'discretionary function' exception. . . .").

3. *See* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 9.2.1 (3rd ed.1999); *see also United States v. Lee,* 106 U.S. 196, 207, 1 S.Ct. 240, 27 L.Ed. 171 (1882) (holding that "[t]he principle behind [the United States' sovereign immunity] has never been discussed or the reasons for it given, but it has always been treated as an established doctrine.") (citations omitted).

4. *See* RICHARD H. FALLON, JR., DANIEL J. MELTZER, AND DAVID L. SHAPIRO, HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1030 (4th ed.1996).

employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[5]

Congress carved out thirteen exceptions to this broad jurisdiction, however.[6]

The exception at issue in this case, the discretionary function exception, exempts from judicial review "[a]ny claim based . . . upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."[7]

The Supreme Court has established a two-step test to determine whether an action falls under the discretionary function exception (hereinafter *Berkowitz* Test).[8] First, the court determines whether any "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."[9] If government policies leave room for an individual choice that "led to the events being litigated," then the action meets this threshold test. In the second step, the court asks whether the challenged action is "of the nature and quality that Congress intended to shield from tort liability."[10] Actions "grounded in social, economic, and political policy" meet this standard.[11] Ultimately, "exempt decisions are those 'fraught with . . . public policy considerations.'"[12]

Plaintiffs offer two general arguments to escape dismissal under the discretionary function exception. They primarily argue

that the Secret Service's actions at issue here fail under the first step of the *Berkowitz* Test because federal law specifically prescribes the Secret Service's District foreign-mission protection strategy. Plaintiffs' alternatively argue that even if the discretionary function exception insulates from suit the Secret Service's plan to protect foreign missions in the District, the actual execution of this plan is unprotected. The court considers—and rejects—each argument in turn below.

## A. The Secret Service's District Foreign–Mission Protection Strategy

█ Congress delegated District foreign-mission protection to the Secret Service in 1970 by amending United States Code Volume 3, Section 202.[13] Defendant posits that this delegation meets the *Berkowitz* Test because Congress explicitly granted the Secret Service the discretion to craft its District foreign-mission protection strategy and that the creation of this strategy involves decisions based upon the allocation of resources and consideration of public policy.[14] Plaintiffs suggest that defendant's actions fail the first step of the *Berkowitz* Test because federal law prescribes the Secret Service's District foreign-mission protection strategy. Plaintiffs look to two sources of federal law to support this theory:

- The Vienna Convention on Diplomatic Relations (hereinafter Vienna Convention), to which the United States is a

---

**5.** 28 U.S.C. § 1346(a) (West 1997).

**6.** *See* 28 U.S.C. § 2680 (West 1997).

**7.** 28 U.S.C. § 2680(a) (West 1997).

**8.** *See generally Gaubert*, 499 U.S. at 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335.

**9.** *Id.* at 322, 111 S.Ct. 1267.

**10.** *United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

**11.** *Id.* at 814, 104 S.Ct. 2755.

**12.** *Cope v. Scott*, 45 F.3d 445, 449 (1995) (quoting *Sami v. United States*, 617 F.2d 755, 767 (D.C.Cir.1979)).

**13.** 3 U.S.C. § 202 (West 1997). Section 202 states in relevant part that "[s]ubject to the supervision of the Secretary of the Treasury," the Secret Service shall "...perform such duties as the Director, United States Secret Service, may prescribe in connection with the protection of ... foreign diplomatic missions located within the District of Columbia."

**14.** *See* Def.'s Mot. at 16–18.

signatory.[15] Under Article 22, the United States agrees that the "premises of the mission shall be inviolable" and that the "Receiving State is under a special duty to take all appropriate steps to protect the premises of the mission against any intrusion or damage and to prevent any disturbance of the peace of the mission or impairment of its dignity."[16] Under Article 29, the United States further agrees that the "person of a diplomatic agent shall be inviolable."[17].

● The Consular Convention Between the United States of America and the People's Republic of Bulgaria (hereinafter Consular Convention), which states that the United States "shall ensure the proper conditions for the normal operation of a consulate" and "shall take all measures to enable members of the consulate to carry out their duties and enjoy the rights, facilities, privileges, and immunities provided" by the Convention and federal law.[18]

Plaintiffs argue that the Vienna Convention and Consular Convention together require a heightened standard of care that dictates the United States' protection of foreign missions and that the United States delegated this prescribed duty to the Secret Service.[19]

Plaintiffs' argument misses the critical distinction between discretion and standard of care. Even if the court assumes, *arguendo*, that the Vienna Convention and Consular Convention properly apply to the Secret Service's behavior here, these treaties lay down only the level of protection the Secret Service should provide. The Vienna Convention broadly decrees that the United States is under a "special duty" to take "all appropriate steps" toward keeping the mission and diplomatic personnel "inviolable."[20] The Consular Convention similarly commands that the United States shall "ensure the proper conditions" and "take all measures" to permit the mission and diplomatic personnel to function.[21] The treaties do not indicate how or by what means the Secret Service should provide this level of protection; the treaties determine a final destination but do not limit how defendant may reach it.

This Circuit has held that the discretionary function exception bars suit under the FTCA in a case where the United States was charged with violating its mandatory duty—also allegedly established by treaty—to provide police protection.[22] In *Industria Panificadora, S.A. v. United States*,[23] the plaintiffs sued the United States for property damage in the wake of the United States' invasion of Panama. They alleged that the United States failed to provide adequate police protection during and after the invasion as required by Article 43 of the Convention Respecting the Laws and Customs of War on Land (hereinafter War Convention).[24] Article 43 states that "an occupying authority must 'take all measures in [its] power to restore, and ensure, as far as possible, public order and safety' in the occupied area."[25] The court held that the discretionary function exception shields "decisions . . . [that] con-

---

15.  April 18, 1961, 23 U.S.T. 3227.

16.  *Id.* at 3237.

17.  *Id.* at 3240.

18.  U.S.-Bulg., April 15, 1974, 26 U.S.T. 689, 693, 695.

19.  Pls.' Opp'n at 14–15.

20.  *See* Vienna Convention, 23 U.S.T. at 3237, 3240.

21.  *See* Consular Convention, 26 U.S.T. at 693, 695.

22.  Oddly, defendant cited this case—albeit for a different proposition—in its motion to dismiss and neither party discussed it further.

23.  957 F.2d 886 (D.C.Cir.1992).

24.  *Id.* at 887.

25.  *Id.* at 887 n. *.

cern allocation of military and law enforcement resources." [26] The court flatly rejected the plaintiffs' entreaty to apply the War Convention because "even if [it] applied to the U.S. forces in Panama ... the discretionary function exception would bar recovery [because the War Convention] prescribes no specific course of conduct that the government must follow to avert tort liability." [27] The Vienna Convention and Consular Convention similarly do not dictate how the Secret Service should implement its District foreign-mission protection strategy and hence are not germane to this analysis.

Plaintiffs do not dispute that the Secret Service's District foreign-mission protection strategy meets the second step of the *Berkowitz* Test. Any challenge would be in vain. The individual decisions to allocate Secret Service personnel to the protection of foreign missions is part of an overall District-wide "enforcement policy and involves the weighing of competing resources and priorities." [28] The Secret Service's decisions about the scope and extent of its law enforcement activities have been subject to little or no judicial scrutiny and are not readily amenable to evaluation by courts. [29]

The Secret Service's District foreign-mission protection strategy is the very type of decision that the discretionary function exception shields from judicial review. Because plaintiffs challenge decisions fundamentally grounded in political, social, and economic judgment, the court shall dismiss this claim.

## B. The Secret Service's Execution of its District Foreign–Mission Protection Strategy

Plaintiffs contend that the Secret Service's formulation of its strategy is distinct from its execution, and that the latter is actionable even if the former is not. [30] The United States rejoins that it cannot, as a matter of law, be liable for the Secret Service's negligent execution of its District foreign-mission protection strategy. [31]

The Supreme Court has offered opaque guidance on this discrete point. In *Varig Airlines,* the Court held that the discretionary function exception cloaked the Federal Aviation Administration's system of "spot-checking" airlines for mechanical problems *and* the acts, even if negligent, of agency employees who *executed* the program because they had a range of discretion to decide how to spot-check. [32] In *Berkowitz v. United States,* the Court held that the discretionary function exception did not bar suit where, in part, the regulatory agency adopted a *voluntary* policy of testing all polio vaccine lots before distribution and agency employees—who allegedly had no discretion to exercise their independent judgment in assessing the lots—knowingly released a lot that did not comply with these standards. [33] These precedents indicate that the implementation of a policy itself protected by the discretionary function exception also receives protection if the implementing agent has some policy-based discretion. The Court held in *Gaubert,* however, that the discretionary function exception only protects acts "based upon the purposes that the regulatory scheme seeks to accomplish." [34]

26. *Id.* at 887.

27. *Id.*

28. *See Fraternal Order of Police v. Rubin,* 26 F.Supp.2d 133, 140 (D.D.C.1998) (holding that the Secret Service Uniformed Division's authority to enforce D.C. law was committed by Congress to the agency's discretion).

29. *Id.*

30. *See* Pls.' Opp'n at 18–20.

31. *See* Def.'s Mot. at 18; Def.'s Reply at 13.

32. *See* 467 U.S. at 819–20, 104 S.Ct. 2755, 81 L.Ed.2d 660.

33. *See* 486 U.S. 531, 546–47, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).

34. *See* 499 U.S. at 325 n. 7, 111 S.Ct. 1267, 113 L.Ed.2d 335.

Hence the central inquiry in this case appears to be whether the means by which the Secret Service implemented its District foreign-mission protection policy itself vests discretion in the individual actors and whether these actors' actions furthered the purposes of the Secret Service's strategy.

Plaintiffs' negligent-execution claims, however, do not require searching analysis because they are facially flawed. To survive a motion to dismiss, plaintiffs' complaint must "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."[35] Plaintiffs' complaint contains only the assertion that the Secret Service was negligent in the "performance" of its duty to protect Mihaylov, and does not allege any facts to support this claim.[36] Indeed, plaintiffs suggest that only "after discovery" they "may be able to show" the Secret Service negligently executed its District foreign-mission protection strategy.[37] The liberties afforded by notice pleading aside, plaintiffs are "required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."[38] To permit plaintiffs to proceed on this claim given the paucity of their factual averments would encourage subsequent "litigation by hunch" and engender "the most unrestrained of fishing expeditions."[39] Of course, this is not the role of any court of limited jurisdiction, particularly when construing a waiver of sovereign immunity.[40] Because plaintiffs have not averred facts to support their claim of negligent execution, the court must dismiss it.

**35.** *Id.* at 324–25, 111 S.Ct. 1267.

**36.** Compl. ¶ 7.

**37.** Pls.' Opp'n at 18.

**38.** *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

**39.** *Id.*

### III. CONCLUSION

Plaintiffs have failed to demonstrate that this court has subject matter jurisdiction under the Federal Tort Claims Act to consider their suits arising from the Secret Service's creation and execution of its District foreign-mission protection strategy. For this reason, the court dismisses plaintiffs' suit. An appropriate order accompanies this memorandum opinion.

### ORDER

Pursuant to Fed.R.Civ.P. 12 and for the reasons stated by the court in its memorandum docketed this same day, it is this 2nd day of November, 1999, hereby

**ORDERED and ADJUDGED** that defendant's motion to dismiss for lack of subject matter jurisdiction is granted; and it is further

**ORDERED and ADJUDGED** that the complaint in this case is dismissed with prejudice.

**40.** *See, e.g., Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.") (citations omitted).