**John M. APPLETON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ.A. 98–344(RMU).**

United States District Court, District of Columbia.

May 19, 2000.

Robert G. Nath, Odin, Feldman & Pittleman, Fairfax, VA, for the plaintiff John M. Appleton.

Doris Coles Hough, District Court Civil Division, United States Attorney's Office, Washington, D.C., for the defendant, United States of America (Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms).

## MEMORANDUM OPINION

URBINA, District Judge.

### Denying the Plaintiff's Renewed Motion for Summary Judgment on Count 2; Denying the Defendant's Renewed Motion for Summary Judgment on Count 2

## I. INTRODUCTION

This matter is before the court upon cross-motions for summary judgment on

the sole remaining count of the complaint, count 2. The plaintiff, John M. Appleton, filed a three-count complaint alleging negligence and arbitrary and capricious exercise of power by the U.S. Treasury Department's Bureau of Alcohol Tobacco and Firearms ("ATF'") and the U.S. State Department (collectively, "the Government").

In 1994, Mr. Appleton filed five applications for permits to import ammunition originally made for the South–African government. Mr. Appleton did not know exactly who had made the ammunition, so on his applications he listed "State Arsenal, South Africa", a generic term which he claims is accepted by firearms dealers and by the ATF when more specific information is not available. So far as the record currently discloses, it appears that the ATF examiner, Ms. Frances Burroughs,[1] did not conduct an investigation into the identity of the manufacturer. The ATF granted Mr. Appleton's import permits in 1994 and 1995. Relying on those permits, Mr. Appleton contracted to resell the ammunition to a businessman in Illinois.

When the ammunition arrived in the United States, however, the ATF investigated to see if it could identify the manufacturer more specifically than "State Arsenal, South Africa." Based on information the ATF requested and received from Mr. Appleton, the agency discovered that the ammunition had been manufactured by Pretoria Metal Pressings ("PMP"), an entity which had been "debarred" by State under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778 *et seq.* As a consequence of the debarment, it was illegal to import arms manufactured by PMP. Accordingly, ATF revoked Mr. Appleton's import permits. Because it was illegal to import the ammunition without the permits, Mr. Appleton could comply with the law only by

breaching his resale contract, which he did.

Mr. Appleton alleged that the State Department acted arbitrarily by debarring PMP and by doing so without notice. He further alleged that ATF's revocation of his permits interfered with his resale contract. *See* Compl. Counts 1 and 3. Lastly, he alleged that ATF was negligent in approving his applications in the first place, i.e., in "failing to determine that some state arsenals of South Africa were ineligible for ammunition import permit approval." *See* Compl. Count 2, ¶ 23. The case is unusual in this respect because Mr. Appleton is essentially arguing that the ATF should have *denied* his import applications.

Pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680, the Government asked the court to dismiss the complaint for failure to state a claim. Specifically, the Government contended that the FTCA shields it from suit for actions taken in the performance of a "discretionary function", and for actions which allegedly interfere with contract rights. Alternatively, the Government contended that Mr. Appleton was contributorily negligent in the approval of the permits, because he should have supplied more information about the origin of the ammunition. (*See* Mot. to Dis. at 1–2). Mr. Appleton opposed the motion and filed his own motion for summary judgment.

*Counts 1 and 3 Dismissed.* By Memorandum Opinion and Order dated August 31, 1999, the court granted in part and denied in part the Government's motion to dismiss. Specifically, the court held that the FTCA's contract interference exception, 28 U.S.C. § 2680(h), barred Mr. Appleton's claim that ATF interfered with his contractual relations with a third party. Accordingly, the court dismissed counts One and Three and denied the plaintiff's

---

1. Interestingly, the ATF has not produced an affidavit from Ms. Burroughs explaining how and why she decided not to investigate the "State Arsenal" designation. For his part, Mr. Appleton did not seek to depose Ms. Burroughs. *See* Reply in Supp. of Def.'s 2d Mot. for Summ.J. at 4 n. 3.

motion for summary judgment on those counts.

*Count 2: ATF's Discretion.* Secondly, the court found that the record left a genuine issue as to whether or not ATF employees exercised discretion in approving Mr. Appleton's import applications. Accordingly, the court denied without prejudice the Government's motion to dismiss count two (the negligence claim) and permitted Mr. Appleton to conduct discovery to obtain evidence on the discretion issue.

*Count 2: Negligence and Contributory Negligence.* Lastly, the court found there was a genuine issue as to whether or not ATF and/or Mr. Appleton acted negligently. Accordingly, the court denied without prejudice the plaintiff's motion for summary judgment on count 2 and authorized discovery on the issue of each party's negligence.

As directed by the August 31, 1999 Order, Mr. Appleton and the Government conducted supplemental discovery and filed renewed motions for summary judgment on count 2. For the reasons set forth below, the court will deny both parties' motions.[2]

## II. BACKGROUND

Mr. Appleton is an American businessman licensed to buy and sell arms under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778 and 22 C.F.R. §§ 120–130. In 1994, British arms broker Tony Slatter offered to sell Mr. Appleton ammunition imported from South Africa. Mr. Appleton submitted five "Form 6" import permit applications to ATF listing "State Arsenal, Republic of South Africa" as the manufacturer of the ammunition. (*See* Appleton Dec. ¶ 6.) ATF approved the permits between October 1994 and January 1995. Mr. Appleton then contracted to resell the ammunition to an arms dealer in Illinois. (*See* Comp. ¶ 14.)

Mr. Appleton maintains that he supplied all the information he could reasonably obtain about the identity of the manufacturer. Mr. Appleton asked Mr. Slatter for information about Slatter's supplier and about the original manufacturer. Mr. Slatter professed not to know who the manufacturer was and also indicated that he was unwilling to divulge the identity of his supplier for proprietary reasons. In other words, Slatter refused to identify his supplier out of concern that Mr. Appleton would contact the supplier directly and "cut out" Slatter. (*See* Pl.'s Mot. for Summ.J. at 5–6.[3])

Nonetheless, the Government maintains that Mr. Appleton could have asked Mr. Slatter for additional information at the time of their negotiations which would have revealed that the ammunition was in a crate marked "ARMSCOR." ATF was able to determine the manufacturer based on Mr. Appleton's submission of a drawing of the "headstamp" markings on the ammunition during a subsequent investigation. The ATF argues that Mr. Appleton should have requested a sample of the ammunition and/or a reproduction of the headstamp markings from Mr. Slatter *before* submitting his applications. (*See* Opp. to Pl.'s Mot. for Summ.J. at 8–10.)

When the ammunition arrived in the United States in February 1995, ATF initi-

---

**2.** At the initial status hearing held on April 27, 2000, plaintiff's counsel (Robert Nath, Esq.) indicated that the plaintiff continues to be amenable to referral to a mediator for settlement discussions. Defense counsel (Doris Coles–Hough, Esq.) requested additional time to consult with her client before stating a position on mediation. Accordingly, the court ordered the parties to appear for a status hearing on May 22, 2000, at which time they will state their positions on mediation.

**3.** The parties' briefs in support of their renewed motions for summary judgment incorporate their original motion briefs by reference. Accordingly, citations to the original motion briefs are listed as "Pl.'s Mot. for Summ.J." and "Def.'s Mot. to Dis." Citations to the instant motion briefs are listed as "Pl.'s 2d Mot. for Summ.J." and "Def.'s 2d Mot. for Summ.J."

ated an investigation into the identity of the manufacturer. ATF discovered that the ammunition had been manufactured by Pretoria Metal Pressings Ltd. ("PMP") in 1983, delivered to the South African Defense Force directly after production and sold at some unspecified date to a British concern called TSF. (*See* Pl.'s Mot. for Summ.J., Ex. 20.) Following a State Department policy which debarred certain arms manufacturers related to the defunct South African apartheid regime, including PMP, ATF revoked Mr. Appleton's permits in March 1995. *See* 27 C.F.R. § 47.55. Subsequently, complying with the legal prohibition on importing PMP-made ammunition, Mr. Appleton breached his contract to resell the ammunition.

In May 1996, Mr. Appleton filed an administrative claim with ATF. ATF denied the claim in August 1997. Mr. Appleton subsequently initiated the instant action.

## III. DISCUSSION

### A. Legal Standard

Summary judgment shall be granted if the record before the court (including the pleadings, depositions, answers to interrogatories, admissions, and affidavits supporting and opposing the motion) shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Crawford v. Signet Bank,* 179 F.3d 926, 928 (D.C.Cir.1999). A fact is material if its existence or nonexistence might affect the outcome of the action. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Farmland Indus. v. Grain Board,* 904 F.2d 732, 735–36 (D.C.Cir. 1990). There is no genuine issue as to a material fact if the record presented on motion, taken as a whole, could not lead a rational trier of fact applying the relevant burden of proof to find for the non-moving party. *See Anderson,* 477 U.S. at 248, 254–55, 106 S.Ct. 2505; *Brees v. Hampton,* 877 F.2d 111, 117 (D.C.Cir.1989). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving him the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Martin v. DCMPD,* 812 F.2d 1425, 1435 (D.C.Cir.1987).

### B. The Cross–Motions for Summary Judgment on Count 2

The lone count remaining in Mr. Appleton's complaint, the second count, alleges that ATF was negligent in its approval of his permit applications. *See generally* Compl. ¶¶ 23–24. Specifically, Mr. Appleton alleges that ATF should have realized that ammunition from some "state arsenals" of South Africa were ineligible for importation into the United States. (*See* Comp. ¶.23.) The Government responds that such a negligence claim is barred by the discretionary-function exception of the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. section 2680(a) ("the discretionary exception"). Furthermore, the Government contends, even if the negligence claim is not barred by the discretionary exception, there is no genuine dispute over the fact that ATF was not negligent. Lastly, the Government contends that even if the ATF was negligent in approving Mr. Appleton's permits, his contributory negligence bars him from recovering.

This court's August 31, 1999 Opinion found that the record as it then stood left a genuine issue as to whether ATF employees exercised discretion in reviewing Mr. Appleton's import applications. Consonant with that Opinion, the parties conducted supplemental discovery to gather evidence bearing on the issues of ATF discretion, ATF's alleged negligence and Mr. Appleton's alleged contributory negligence.

Based upon the enhanced record, the court concludes that neither Mr. Appleton

nor the ATF has shown the lack of a genuine issue as to whether ATF employees exercised discretion in approving Mr. Appleton's permits. As a consequence, at this juncture the court will not hold that the FTCA's discretionary-function exception shields ATF from Mr. Appleton's negligence claim.

The court then turns to the underlying issue of the parties' alleged negligence. Based on the enhanced record, the court concludes that there remain genuine issues as to whether ATF was negligent and whether Mr. Appleton was contributorily negligent. Short of an amicable resolution of the negligence claim, then, the discretionary-function, negligence and contributory-negligence issues will be decided at trial.

1. **The Evidence Leaves a Genuine Issue as to Whether ATF Exercises Discretion in Reviewing Import Applications which Use Generic Manufacturer Terms such as "State Arsenal"**

The FTCA provides, in pertinent part, that the United States is immune from:

Any claim based upon an act or omission of an employee of the Government ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception was meant to shield the Government from suits challenging "legislative and administrative decisions grounded in social, economic, and political policy." *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense ("Varig Airlines")*, 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The exception "protects only governmental actions and decisions based on considerations of public policy." *See Berkovitz v. United States*, 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Congress created the excep-

tion "to protect the Government from liability that would seriously handicap efficient government operations." *United States v. Muniz*, 374 U.S. 150, 163, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Furthermore, "even the negligent performance of a discretionary function does not subject the government to liability under the Federal Tort Claims Act." *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1194 (D.C.Cir.1986). Absent valid constitutional concerns, this court will not substitute its judgment for that of the State Department or ATF on a matter of policy or discretion. *See generally Cope v. Scott*, 45 F.3d 445, 448 (D.C.Cir.1995) ("[The discretionary function exception] was designed to prevent the courts from 'second guessing,' through decisions in tort actions, the way that government officials choose to balance economic, social, and political factors as they carry out their official duties.").

For the reasons which follow, the court concludes there is a genuine issue as to whether the ATF exercised discretion in approving Mr. Appleton's permits. Preliminarily, the State Department gave ATF a list of proscribed companies related to the debarred manufacturer ("ARMSCOR") and directed ATF to cross-check import applications against this list. This fact is confirmed by ATF's own Chief of Firearms and Explosives Imports, Lawrence White. Mr. White stated, *"ATF approved [Mr. Appleton's] permits based on information provided on the Forms 6 that the State Arsenal was the manufacturer of the ammunition and the fact that State Arsenal was not on the list of companies affected by the State Department's ARMSCOR policy."* (White Dec. ¶ 6) (emphasis added.)

■ Standing alone, Mr. White's description of the approval process left little room for ATF employees to exercise "discretion" as that term is defined under the Government's own reading of precedent. In its earlier motion to dismiss, the Government quoted *Thompson v. United*

*States*, 592 F.2d 1104, 1111 (9th Cir.1979), for the proposition that a discretionary decision requires "the balancing of several factors made without reliance upon any readily ascertainable rule or standard." (*See* Mot. to Dis. at 17.) Conversely, the Government states that a *non*-discretionary decision is one in which employees "do no more than cross-check 'facts against a clear rule or standard.'" *See id.* at 17 (quoting *Hendry v. United States*, 418 F.2d 774, 782 (2d Cir.1969)); *see generally Beins v. United States*, 695 F.2d 591, 602 (D.C.Cir.1982) (matching individual facts to mandated policy or clear standards is a non-discretionary function within the meaning of § 2680(a)). Taken alone, Mr. White's explanation suggests that the ATF examiner did not exercise discretion but rather merely checked "State Arsenal, Republic of South Africa" against the debarment list, did not find any entity on the list bearing that exact name, and so approved the application without further deliberation.

Indeed, as Mr. Appleton points out, the ATF's Guidelines for permit examiners could easily be read *not* to confer any discretion to accept a "State Arsenal of South Africa" designation at face value without investigation. For instance, the Guidelines state that in step 8 of the review process, the examiner "[d]etermines if firearms, ammunition, or implements of war on the application are importable." *See* Pl.'s Mot. for Summ.J., Jeffries Decl., Ex. A. To make this determination, a handwritten notation on the Guidelines advises, the examiner should "Check State Bull." *Id.* The court construes this as a directive to check the State Department's Bulletin which lists debarred entities. The Guidelines then specifically advise the examiner, "If additional information is needed to determine import status, the application *is* returned with a form ... letter requesting additional information." *Id.* at Guidelines Step 13 (emphasis added). One could readily argue that an application listing merely "State Arsenal of South Africa" qualifies as one where "ad-

ditional information is needed to determine import status." Under that reading, the Guidelines would leave the examiner no choice but to return the application with a letter requesting more specific information about the manufacturer's identity. After all, the Guidelines direct that "the application *is* returned" with a letter requesting more information, not "the application *may be* returned." On this view, the examiner would have violated agency directives by failing to return Mr. Appleton's application with a letter requesting manufacturer information more precise than the generic State Arsenal designation. This is significant, because the discretionary exception would not shield the agency if the examiner's conduct violates a mandatory agency directive. *See Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1196 (D.C.Cir. 1986) (the Federal Tort Claims Act's discretionary exception does not apply if an employee violates mandatory regulations).

Moreover, as Mr. Appleton points out, the ATF still has not produced any statute, regulation or internal policy which explicitly grants ATF examiners discretion to determine whether or not to investigate when an applicant lists a generic term like "State Arsenal" as the manufacturer. This omission does tend to undermine the ATF's contention that its examiner had, and exercised, such discretion in Mr. Appleton's case.

In the papers submitted on the renewed motions for summary judgment, however, the ATF adduces evidence from which a reasonable factfinder could conclude that ATF employees had discretion in reviewing permit applications—in particular, the discretion not to investigate to make sure the generic term "State Arsenal of South Africa" did not in fact refer to an entity whose imports would be prohibited if its exact name were known. Specifically, the ATF issued a memorandum on January 11, 1993, entitled "Firearms and Explosives Imports Branch Procedures" ("Proce-

dures"), to guide examiners in their review of import permit applications. *See* White Decl. II ¶ 6 and Ex. 2. The Procedures provide, in pertinent part,

> The attached procedures are provided for your guidance in accomplishing Imports Branch functions. The procedures are to be considered as guidelines and not as superseding any law, regulation, directive or policy established by higher authority. Also, *the procedures do not cover all situations and therefore, may be modified for unique or unusual situations consistent with the law or regulations, or as directed by higher authority.*

*Id.* (italics added). This is hardly *compelling* evidence that the ATF examiner had discretion not to investigate, particularly absent any statement by the examiner that she in fact exercised discretion under this provision. On the evidence presented by the parties, however, the court cannot quite say a reasonable factfinder could *not* find that the examiners have discretion not to investigate. Specifically, an application which supplies an accurate generic manufacturer description which is not on the list of debarred entities but *may* nonetheless signify a debarred entity, may be one of the "unusual situations" contemplated by the ATF's Procedures. As the ATF points out, the written Procedures are very broad when it comes to determining whether an item is importable, and they do not prescribe an exact course of action for the examiner. *See* Def.'s 2d Mot. for Summ.J. at 8 (citing White Decl. II ¶ 7).

As the Chief of the ATF's Firearms and Explosives Imports branch states in an affidavit, the agency's usual practice is simply to approve an application which lists a manufacturer name which is not on the debarment list. The ATF's Procedures neither require nor preclude further investigation into a generic manufacturer designation which is not itself on the debarment list. *See* White Decl. II ¶ 9. That suggests that further investigation into a generic manufacturer term, if any, occurs at the discretion of the individual examin-

er. *Cf. Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267 (because policy governing federal regulators managing the day-to-day activities of a federal savings and loan did not "specifically prescribe a course of action," the policy imparted discretion to the regulators); *Cope v. Scott,* 45 F.3d 445, 450 (D.C.Cir.1995) (the relevant "statutes do not contain directives so precise that they constrain [the agency's] control over the surface of Beach Drive.... Absent such directives, any action taken (or not taken) regarding the matter is an exercise of discretion."); *see also Irving,* 162 F.3d at 163 (1st Cir.1998) (OSHA compliance inspector's review is discretionary where the "regulations do not prescribe any specific regimen governing the scope or detail of general administrative inspections"); *Sabow v. United States,* 93 F.3d 1445, 1452 (9th Cir.1996) (investigative acts of Naval Investigative Service or JAG Corps agents found to be discretionary where their action or inaction did not violate any mandatory directive); *Hendry v. United States,* 418 F.2d 774, 780–81 (2d Cir.1969) (where there is no "single, known, objective standard ... then the process of certifying [approving a permit], insofar as it involves groping for a standard, is within the discretionary exemption of the [Federal Tort Claims] Act").

Significantly, the ATF *does* provide a concrete example where an examiner encountered a manufacturer designation which was not on the debarment list but decided to investigate further. An examiner elected to investigate an application listing "Government Arsenal, Pretoria, South Africa." When the examiner discovered that the "Government Arsenal" in question was a debarred entity, the ATF denied the application. *See* White Decl. II ¶ 9 and Ex. 5. This is consistent with the premise that ATF examiners have discretion to "look behind" a generic manufacturer term when the term raises enough suspicion that it may refer to a debarred entity. What constitutes "enough" suspicion? Under the ATF's account, that

judgment is left up to the individual examiner with no explicit or formal guidance from the agency.

■ In fairness to Mr. Appleton, his generic manufacturer designation, "State Arsenal, Republic of South Africa", is nearly identical to the generic manufacturer term which led another examiner to investigate further, "Government Arsenal, Pretoria, South Africa." Mr. Appleton might wonder, if one examiner chose to investigate "Government Arsenal, Pretoria, South Africa," shouldn't Mr. Appleton's examiner have investigated his "State Arsenal, Republic of South Africa" designation? This is a fair question, but even an affirmative answer cannot warrant summary judgment for Mr. Appleton on the discretion issue. For purposes of the discretion analysis, the court will assume *arguendo* that (1) the other examiner acted prudently in investigating rather than accepting "Government Arsenal, South Africa" at face value and (2) there is no satisfactory explanation for the inconsistent treatment of these two essentially identical generic manufacturer designations, except the "explanation" that the examiners made opposite discretionary decisions (i.e., one thought an investigation was worthwhile and the other did not). Even these assumptions, however, are consistent with the ATF's contention that its examiners exercised discretion in deciding when a generic manufacturer designation raised enough suspicion to warrant investigation into the manufacturer's identity. If the other examiner acted prudently in investigating "Government Arsenal, South Africa," perhaps Mr. Appleton's examiner *was* negligent in forgoing investigation of his "State Arsenal, Republic of South Africa" designation. But even a negligent discretionary decision is shielded by the FTCA's discretionary-function exception. *See* 28 U.S.C. § 2680(a) (FTCA shields discretionary decisions "whether or not the discretion involved be abused"). In short, if the court ultimately finds the ATF's approval of his permits *was* shielded by the discretionary function, it will not be material that Mr. Appleton's examiner acted inconsistently with other examiners facing the same type of generic manufacturer designation.

Taking another approach in support of his contention that ATF examiners do not have discretion, Mr. Appleton points to letters where the ATF explained that State had directed it to *automatically* deny import applications pertaining to ARMSCOR or related entities. One such letter, issued in October 1994, stated,

> The Department of State has reviewed your application to import the ammunition. They have advised us to deny your application. It is the policy of the Department of State to deny *all* export license applications and other requests for approval involving, directly or indirectly, the Armaments Corporation of South Africa, Ltd., a/k/a ARMSCOR, ... and any ... associated companies....

Pl.'s 2d Mot. for Summ.J., Ex. 11. These denial letters, Mr. Appleton contends, "reflect[ ] that in processing import permit applications for foreign policy considerations [the ATF examiners] are simply parroting general policy considerations established by the Department of State." Pl.'s 2d Mot. for Summ.J. at 11. Such letters are indeed evidence that the ATF has no discretion to grant applications to import/export armaments which are manufactured by ARMSCOR or related debarred entities. This is of no avail to Mr. Appleton, however, because the ATF has never claimed that its examiners have discretion to approve armaments when the manufacturer listed by the applicant is a debarred entity. The ATF has never denied that if an application's manufacturer entry contains the name of a debarred entity, the examiner has no choice but to deny the application in compliance with the directive of the State Department. But proof that ATF has no discretion to approve imports it *knows* are made by a debarred entity begs the central question,

"Do ATF examiners have discretion not to investigate an application which uses a generic manufacturer term which *might* represent a debarred entity?"[4]

Mr. Appleton also tries another tack in contending that the reason the ATF did not "look behind" his "State Arsenal" designation was simple oversight, not a conscious discretionary decision that further investigation was inadvisable. *See* Pl.'s 2d Mot. for Summ.J. at 17 ("Simple BATF negligence rather than an exercise of discretion was the mechanism which injured Appleton."). Mr. Appleton proffers evidence showing that, at the same time the ATF approved his application, it *denied* another application which listed "Government Arsenal, Pretoria, South Africa" as the manufacturer. *See* Pl.'s 2d Mot. for Summ.J. at 11–12 and Ex. 13, Ex. 13A. In fairness to Mr. Appleton, evidence that the ATF approved his "State Arsenal" applications but simultaneously denied another *is* consistent with his allegation that the ATF's failure to deny his applications was negligent. That evidence, however, is *also* consistent with the ATF's theory of the case: when confronted with an application listing "State Arsenal of South Africa" as the manufacturer, each individual examiner had discretion whether or not to investigate to "pin down" a more precise identity for the manufacturer. A reasonable factfinder might not find the ATF's explanation of the discrepancy to be credible, but issues of credibility or the relative weight of competing evidence are not properly resolved on motions for summary judgment.

Mr. Appleton also proffers evidence that "a permit [application] listing an ambiguous but non-ARMSCOR entity as the manufacturer was challenged and disapproved the same week as Appleton's first permit was approved." Pl.'s 2d Mot. for Summ.J. at 14 (citing Ex. 31). That application listed "PMF, So. Africa" as the manufacturer. *Id.*, Ex. 31. The examiner's note on the rejected application reads, "Returning as cancelled. Could not get satisfaction [that] the ammo was not one of the problem companies." *Id.*, Ex. 31A. Similarly, in October 1994 the ATF rejected an application which listed the manufacturer merely as "Government Arsenal, Pretoria, South Africa." *See* Pl.'s 2d Mot. for Summ.J., Ex. 13A. Because the debarment list does not include an entity named "Government Arsenal, Pretoria, South Africa," the ATF examiner in that case must have elected to investigate further and found out that the manufacturer represented by the umbrella term "Government Arsenal" was actually a debarred entity. These rejected applications do show that, unlike in Mr. Appleton's case, ATF examiners sometimes investigate further when confronted with a South African manufacturer entry which *could* represent a debarred entity. Again, however, they do not *necessarily* show that the examiners had no discretion to do otherwise.

While casting serious doubt on the ATF's argument that its examiner exercised discretion in reviewing Mr. Appleton's applications, Mr. Appleton's evidence does not rule out that possibility as a matter of law. The evidence adduced by Mr. Appleton does not logically preclude this court from concluding, ultimately, that ATF examiners may decide whether their time is well spent investigating a generic "State Arsenal" application. By comparison, in *Varig Airlines* the Supreme Court held that the FAA's decision to certify certain airplanes as flight-worthy without first inspecting them was protected by the FTCA's discretionary exception. Even if the FAA's employees were negligent in checking airplanes, their acts were protected because they "were specifically empow-

---

4. If the ATF ultimately convinces the factfinder that its examiners have such discretion, it will be immune from liability even if the examiner in this instance exercised her discretion unwisely. *See* 28 U.S.C. § 2680(a). Likewise, the discretionary exception would bar the broader complaint that it is not advisable for the ATF to afford its examiners such unguided discretion in the first place.

ered to make policy judgements regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Varig Airlines,* 467 U.S. at 820, 104 S.Ct. 2755. Likewise, the court here could find that the ATF examiner decided that in light of the huge volume of applications to be processed by each examiner, her time would be better spent, and the policies guarding against import of prohibited armaments better served, if she did not investigate what Mr. Appleton meant by the term "State Arsenal, Republic of South Africa." *Cf. Mihaylov v. United States,* 70 F.Supp.2d 4, 8 (D.D.C.1999) (Secret Service may choose where to allocate personnel as part of its weighing of "competing resources and priorities").[5] In this vein, the statement of the Chief of the ATF's Firearms and Explosives branch, Lawrence White, suggests that it would be infeasible for examiners to independently investigate every application's manufacturer designation. *See* White Decl. II ¶ 2 and Def.'s 2d Mot. for Summ.J. at 20–21 (in 1994–1995, about six ATF Imports Branch examiners reviewed 25,000 Form 6 import applications, which works out to 45 applications per examiner per week, in addition to the examiners' other duties).

Consequently, the court finds there is still a genuine issue as to whether the ATF had and exercised discretion not to investigate Mr. Appleton's "State Arsenal" designation. Accordingly, the court denies both parties' motions for summary judgment on the FTCA discretionary-function issue.

■ On the other hand, at trial, it will not be enough for the ATF to assert merely that because the examiner did not investigate, that omission "must have been" the product of a conscious, policy-based deci-

sion not to investigate. Rather, the ATF must convince the factfinder that the examiner's decision to accept the State Arsenal designation rather than investigate was a conscious decision based in some way on policy considerations, even if only a consideration as to the best use of agency resources. As the Supreme Court has explained, if an agency's policy leaves no room for an official to exercise policy judgment "in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful." *See Berkovitz,* 486 U.S. at 546–47, 108 S.Ct. 1954; *see also Sami v. United States,* 617 F.2d 755, 766 (D.C.Cir.1979) (the government *can* be held responsible for "any negligent execution of admittedly discretionary policy judgments [the debarment of PMP] where the decisions required for the execution did not themselves involve the balancing of public policy factors."). Lastly, the defendant must show not just that the examiner made a decision not to investigate, but also that the decision was based in some way on policy concerns, including the efficient use of agency resources. *See Orlikow v. United States,* 682 F.Supp. 77, 82 (D.D.C.1988) (even though a decision is being made, if that decision is not grounded in public policy concerns, it is not immunized; to hold otherwise would cause § 2680 to "swallow [the FTCA's] waiver of sovereign immunity.").

## 2. The Record Leaves Open a Genuine Issue as to Whether ATF and Mr. Appleton were Negligent.

Denying summary judgment on the discretion issue leaves open the possibility that the court will find the discretionary-function exception does not immunize the

5. In *Red Lake Indians,* for instance, the U.S. Court of Appeals considered whether the FTCA immunized the federal government for failing to make contingency plans after receiving general warnings about an imminent uprising on an Indian reservation. The court held the discretionary function exception applied because the agencies involved "estimat[ed] the degree of confidence to be placed in a vague warning and assign[ed] personnel accordingly." *See Red Lake,* 800 F.2d at 1198.

ATF against Mr. Appleton's negligence claim. Therefore the court must consider the parties' motions for summary judgment on the issue of the parties' alleged negligence. For the reasons set forth below, the court concludes there is a genuine issue as to whether the ATF and Mr. Appleton were negligent.

The FTCA allows the government to be held liable "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674 ("the private-party provision"). In the August 31, 1999 Opinion, this court applied that provision to the facts here and concluded that, as a matter of law, the ATF had a duty to use due care in reviewing Mr. Appleton's import applications and may be held liable if shown to have breached that duty.[6] This is the law of the case.[7]

■ Mr. Appleton claims that the ATF was negligent in failing to investigate exactly which manufacturer was meant by the term "State Arsenal, Republic of South Africa." The court concludes there is a genuine issue as to the ATF's negligence.

Mr. Appleton provides documentation showing that ATF approved other import applications which explicitly listed Pretoria Metal Pressings ("PMP") as the manufacturer of the ammunition sought to be imported. (See Pl.'s Mot. for Summ.J., Exs. 13–14.) According to the State/ATF policy enacted in 1994, PMP was a debarred company. (See Pl.'s Mot. for Summ.J., Ex. B.) While this does not *prove* that ATF negligently approved Mr. Appleton's applications, it does raise a specific concern about the level of care ATF examiners used in reviewing applications to import South Af-

rican armaments during the relevant period.

Moreover, as mentioned above, Mr. Appleton has introduced documents showing that the ATF *denied* applications to import ammunition from manufacturers listed as "State Arsenal, Pretoria, South Africa" and "PMF, South Africa." This discrepancy between the ATF's decisions in other cases and its decision in this case could support the inference that the ATF was negligent. In all three cases—the "PMF" application, the "Pretoria" application and Mr. Appleton's application—the examiner confronted a generic designation which might well have reflected a debarred entity. In two cases, the examiners investigated and denied the applications, but in Mr. Appleton's similar case, the examiner did not investigate at all and erroneously approved the application.

· The ATF counters that the discrepancy is not attributable to any oversight in its review of Mr. Appleton's application, but rather to the different examiners' exercise of their discretion. Specifically, the ATF maintains that the examiners on the denied South Africa applications exercised their discretion to investigate into the manufacturer's precise identity, while the examiner on Mr. Appleton's granted South Africa application exercised her discretion *not* to investigate. As the ATF points out, the denied applications differed from Mr. Appleton's application in a way which could lead the examiners in the respective cases to exercise their discretion differently: the denied applications listed "Pretoria" and "PMF" in the manufacturer box, while Mr. Appleton's application did not. A reasonable factfinder could find it credi-

---

6. The court addressed and expressly rejected the government's argument that the government cannot be held liable under the FTCA for negligence in the performance of a "core government function." *See* Mem.Op. dated August 31, 1999. The court also rejected the government's argument that it could not owe a permit applicant any duty of care because it had no duty to act on a permit application at all. *Id.*

7. In light of the court's unambiguous holding on the duty issue in the prior Opinion, it is difficult to fathom ATF's assertion that "plaintiff does not and cannot show an applicable common-law duty owed by defendant...." Def.'s Opp. to Pl.'s 2d Mot. for Summ.J. at 5.

ble that this distinction caused the ATF to investigate the denied applications but not Mr. Appleton's application. For one thing, the use of "Pretoria" could highlight the possibility that the manufacturer could be a debarred entity which had manufactured armaments for the apartheid regime, which had its capital in that city. *See* Pl.'s 2d Mot. for Summ.J., Ex. 13A. Similarly, the designation "PMF'" closely resembles the debarred entity "PMP", so an examiner could decide that "PMF'" raises more suspicion than the more general "State Arsenal of South Africa" designation.

On the other hand, a reasonable factfinder could conclude that "State Arsenal, Republic of South Africa" should have served as a "red flag" to any diligent and competent examiner. On that view, ATF examiners are properly charged with knowledge that the State Department has banned the importation of armaments made by many manufacturers affiliated with the former South African government. From this perspective, accepting a "State Arsenal of South Africa" designation at face value runs an unreasonably high risk of approving the import of items made by a debarred entity. Approving such an application without investigation,[8] then, could be viewed as imprudent and careless.[9]

In short, the evidence is not so overwhelming, on either side, as to justify removing the issue of ATF negligence from the province of the factfinder. According-

ly, both parties' motions for summary judgment will be denied as to the ATF's alleged negligence.

■ *Mr. Appleton's Alleged Contributory Negligence.* The Government contends that Mr. Appleton was contributorily negligent by putting down merely "State Arsenal" as the manufacturer of the ammunition. (*See* Mot. to Dis. at 23.) The District of Columbia has not adopted the doctrine of comparative negligence. *See D.C. v. Washington Hosp. Center,* 722 A.2d 332, 339 (D.C.1998). Under D.C. law, "[a] plaintiff is barred from recovery if his negligence was a substantial factor in causing his injury, even if the defendant was also negligent, as long as the plaintiff's negligence contributed in 'some degree' to his injury." *Sinai v. Polinger Co.,* 498 A.2d 520, 528 (D.C.1985). "The defendant may not be held liable, and conversely the plaintiff may not be barred from recovery, unless their respective negligence was a 'substantial factor' in causing the injury." *Id.* at 527. "Contributory negligence is the failure to act with the prudence demanded of an ordinary reasonable person under like circumstances." *Esfandiari v. US,* 810 F.Supp. 1, 7 (D.D.C.1992). Contributorily negligence, then, is conduct "which falls below the standard to which a plaintiff should conform for his protection and contributes to the plaintiff's injury." *Scoggins v. Jude,* 419 A.2d 999 (D.C.1980).

---

8. As Mr. Appleton points out, the ATF did not ask him for more precise manufacturer information. *See* Reply in Supp. of Pl.'s 2d Mot. for Summ.J. at 5 ("The government alone had the unencumbered power and authority to require further information...."). This omission could be seen as part of the ATF's broader "failure to investigate" and therefore as evidence of negligence.

9. The discussion thus far has centered on whether the ATF may have been negligent in its response to the manufacturer information it received. There is also evidence, however, that the ATF may have negligently given false or incomplete information to Mr. Appleton *before* he submitted his applications. Specifi-

cally, Mr. Appleton claims that he contacted the ATF to ask for a list of debarred manufacturers and an ATF employee named Virginia Alford told him that there was no such list. *See* Reply in Supp. of Pl.'s 2d Mot. for Summ.J. at 3 n. 2 and 4. If this allegation is true, a factfinder could find that Ms. Alford's inaccurate statement was negligent and impeded Mr. Appleton's efforts to find out whether he was listing a debarred manufacturer.

The court notes that the ATF vigorously denies any suggestion that Ms. Alford misled Mr. Appleton in any way. *See* Reply in Supp. of Def.'s 2d Mot. for Summ.J. at 5–6.

The court finds that the enhanced record still leaves open a genuine dispute as to whether Mr. Appleton acted negligently in putting down "State Arsenal, Republic of South Africa" on his permit applications rather than more specific information.[10] First, the ATF contends that the "plaintiff provides no reason why he was not able to obtain a sample of the ammunition, or even a drawing of the ammunition headstamp, prior to submitting the import applications...." Def.'s 2d Mot. for Summ.J. Significantly, Mr. Appleton's submissions still provide no explanation for his failure to obtain a sample or headstamp drawing. He does not claim, for instance, that he asked his seller for a sample or headstamp and was refused. Nor does he claim that he obtained a sample or headstamp but still was unable to identify the manufacturer. On the contrary, Mr. Appleton concedes, "There was, of course, no reason why the plaintiff could not obtain a sample of the ammunition or provide a drawing of the headstamp other than the fact that he was not requested to [do so]." Reply in Supp. of Pl.'s 2d Mot. for Summ.J. at 5.

This statement reflects Mr. Appleton's belief that the ATF acted negligently by failing to *direct* him to provide a sample or a headstamp drawing. That position necessarily rests on the premise that the ATF had reason to believe that a sample or headstamp might lead to a precise identification of the manufacturer. This is not an unreasonable premise. A reasonable factfinder could find that ATF acted negligently by failing to seek such information before approving the applications. None of this, however, undermines the ATF's contention that Mr. Appleton was negligent in failing to obtain a sample or headstamp *himself* before submitting his applications. If the ATF should have known to obtain a sample or headstamp drawing, there is no reason why Mr. Appleton

should not have also known to do so. On this view, Mr. Appleton cannot blame the ATF for his failure to take the initiative in fulfilling his obligation to provide complete manufacturer information.

Mr. Appleton's explanation that the ATF did not ask him to obtain a sample or headstamp drawing is unavailing on a motion for summary judgment. After all, Item 12 of the application specifically informs the applicant that he has a duty to supply "true and complete" information. *See also* 27 C.F.R. § 47.35(a) ("All of the information called for in each form shall be furnished as indicated by the headings on the form and the instructions on or pertaining to the form."). Similarly, the application advises applicants that, "In some cases it may be necessary to request additional information or to have the firearm or ammunition sent to ATF for examination to determine the import status." White Decl. II, ¶ 5 and Ex. 1.

If this duty to submit "true and complete" information is to be meaningful, it must carry with it the obligation to take at least *some* available measures which could reasonably be expected to yield information needed to make the manufacturer entry "true and complete." A reasonable factfinder could find that to fulfill this duty, Mr. Appleton could and should have obtained an ammunition sample and a headstamp drawing before submitting his applications.

A reasonable factfinder could also reach the opposite conclusion. The rationale might be that such steps are too onerous to expect of an applicant and thus are not subsumed within an applicant's duty of due care. Alternately, the rationale could be that the applicant is entitled to rely on ATF to request more information if the agency, as the body with expertise in the field, determines that more information is

10. Mr. Appleton contends that even if he is found contributorily negligent, he can still recover because the ATF had the "last clear chance" to avoid the erroneous approval of his applications. *See* Pl.'s 2d Mot. for Summ.J. at 7–10. Because the court does not find either party negligent at this juncture, the last-clear-chance issue is premature and will not be considered.

necessary to render the application "complete" according to its standards. The factfinder could find this position tenable if it credits Mr. Appleton's claim that it is "industry practice in the firearms industry to list government manufacturers on BATF Forms 6 as 'state arsenal'" and the like. *See* Pl.'s Opp. to Def.'s 2d Mot. for Summ.J. at 4. The factfinder *could* credit that claim, because Mr. Appleton adduces documents showing that the ATF approved applications to import armaments manufactured by various "State Arsenals." *See* Pl.'s 2d Mot. for Summ.J. at 5–7 and Exs. 1–5. Moreover, the ATF itself admits it is "not inaccurate" to say that "State Arsenal" is "common in the industry" and is "'commonly accepted' by the agency in approving other applications from other countries." *See* Reply in Supp. of Def.'s 2d Mot. for Summ.J. at 8.

Accordingly, the court denies both parties' motions for summary judgment on the issue of Mr. Appleton's alleged negligence.

## V. CONCLUSION

For the foregoing reasons, this court finds that a genuine issue remains as to whether the ATF examiner who approved Mr. Appleton's applications made a policy-based discretionary decision not to investigate his "State Arsenal" manufacturer entry. The court also finds a genuine issue as to whether ATF and/or Mr. Appleton acted negligently in the approval of his applications. Accordingly, the court denies the parties' cross-motions for summary judgment as to count 2.

An Order directing the parties in a fashion consistent with this Opinion was separately executed and issued at the initial status hearing held on April 27, 2000. This Memorandum Opinion is executed and issued this 18th day of May, 2000